UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| MOHSIN MAHMUD and ELIZABETH MARTINEZ | : | |
| Debtor | : | Bankruptcy No. 08-10855bf |
| | | |
| MOHSIN MAHMUD and ELIZABETH MARTINEZ | : | |
| Plaintiffs | : | |
| v. | : | |
| JTH INVESTMENT GROUP, LLC and DAVID HANG | : | |
| Defendants | : | Adversary No. 08-0175 |

.................................................

MEMORANDUM

.................................................

Presently before me is an adversary proceeding commenced by the joint chapter 13 debtors, Mr. Mohsin Mahmud and Ms. Elizabeth Martinez, against JTH Investment Group, LLC and Mr. David Hang. The plaintiffs assert that the defendants' secured claim is subject to "strip off" under 11 U.S.C. § 506(a), because it is in third lien position and the value of the collateral is less than the amounts owed to the first two lien creditors.[1] The defendants responded by denying that the plaintiffs valuation of the collateral is accurate, as well as denying plaintiffs' averments regarding defendants' lien priority and the amounts due the two other secured creditors.

---

[1] "The term 'strip off' is used when a junior mortgage is totally unsecured, whereas the term 'strip down' is used when a mortgage is partially unsecured and partially secured." In re Talbert, 344 F.3d 555, 556 n.1 (6th Cir. 2003).

For the reasons that follow, I conclude that the plaintiffs are not entitled to relief under section 506(a) as to defendant Hang, as he does not hold nor assert any secured claim in this bankruptcy case. Furthermore, the plaintiffs are not entitled to any relief under section 506(a) as to defendant JTH Investment Group, LLC, because they have not met their evidentiary burden to demonstrate that the mortgage lien held by this defendant is wholly unsecured.

I.

The following facts were proven at trial.[2]

Mr. Mahmud testified credibly that in 1997 the plaintiffs purchased the real property located at 431 Willows Avenue, Folcroft, Delaware County, Pennsylvania. They paid $88,000 for the Folcroft property and financed its purchase with a mortgage from Washington Mutual Bank. He also testified credibly that in 2001, the plaintiffs refinanced their mortgage obligation to Washington Mutual by obtaining a $101,000 mortgage loan with Everhome Mortgage. Then, in 2006, the plaintiffs borrowed $35,000 from Citizens Bank, which loan also was secured by a mortgage on their Folcroft realty.

By an agreement dated November 30, 2006, an entity owned by Mr. Mahmud, Moonlight Holdings, Inc., purchased a gas station and convenience store owned by defendant JTH Investment Group, LLC. Ex. D-2. The latter entity is owned by defendant David Hang. The purchase price was $125,000, plus the wholesale cost of the

---

[2]At the defendants' request, and with the plaintiffs' consent, the trial was postponed once so the parties would have additional time to present all relevant evidence. As will be discussed below, the evidentiary record made was still limited despite the postponement.

inventory stock. Id. The closing of this sale took place in February 2007, at which time the value of the inventory was fixed at $30,000. Furthermore, Moonlight agreed to pay $80,000 to either JTH or Mr. Hang for a consultancy agreement.

At the closing, Moonlight paid more than $100,000 in cash to JTH. In addition, Moonlight signed a promissory note in favor of JTH Investment Group, LLC, dated February 23, 2007, in the amount of $125,000, payable over 60 months, with an interest rate of 6.5%. Ex. D-3. That promissory note was secured by a mortgage on the Folcroft realty in favor of JTH Investment Group, LLC., which mortgage was dated February 23, 2007 and signed by Mr. Mahmud and Ms. Martinez as husband and wife. Ex. D-1.

Mr. Mahmud quickly concluded that the business purchased by Moonlight from JTH was not profitable and offered to return it to the seller. That offer was declined. Moonlight has not tendered any payments on the promissory note.[3]

Insofar as the value of the Folcroft realty is concerned, Mr. Mahmud testified that he believed its present value is about $112,000. He described the property as a 70 year old Cape Cod style residence, with 4 bedrooms and 1.5 bathrooms. The realty needs some repairs and remodeling. He was also unaware of any recent sales of neighboring homes. At the time of their bankruptcy filing on February 4, 2008, however, Mr. Mahmud conceded that the debtors valued their home at $140,000. See Bankruptcy Schedule A.

---

[3] According to the debtors' Statement of Financial Affairs, question #4, JTH commenced a prepetition foreclosure action.

No testimony or documents were offered at trial concerning the amounts due creditors holding liens against the Folcroft realty as of the date of the debtors' chapter 13 bankruptcy petition.[4] To prove the extent of liens against this property with priority ahead of JTH's lien, the plaintiffs requested that "judicial notice" be taken of two secured proofs of claim filed in this chapter 13 case. The defendants objected, arguing that those proofs of claim are inadmissible.[5]

This court's claims register reflects that Citizens Bank filed a secured proof of claim, docketed at claim #1, in the amount of $34,088.65. Attached to this claim are copies of 2 non-consecutive pages from a "Pennsylvania Closed-End Mortgage." These pages show the Folcroft property as collateral, the original principal loan amount as $35,040, and the signatures of the debtors. The mortgage is alleged to have been signed on August 25, 2006. This proof of claim does not include the promissory note, the entire mortgage, nor any itemization of the amount of the claim.

Claim #5 on the register was filed by Everhome Mortgage in the amount of $114,696.97. The claim asserts it is secured upon real estate, but does not identify the collateral nor the date the debt was incurred. (The debtors' bankruptcy schedules reflect only one property as owned by them.) Attached to the proof of claim is an "Itemization of Total Debt and Arrearages As of the Time of Filing." In addition, the Everhome claim

---

[4]The Statement of Financial Affairs, question #4, also reveals that Everhome Mortgage had commenced a prepetition foreclosure action. That state court complaint was not offered in evidence.

[5]This objection will be discussed below.

also has an "exhibit summary" listing a mortgage and note, but neither document is attached. Instead, reference is made to "L.B.R. 9040-1."[6]

Finally, defendant JTH Investment Group, LLC filed a secured proof of claim in the amount of $174,166.00, and docketed at claim # 12. This proof of claim asserts that the value of the collateral is $200,000. Mr. Hang did not file a secured proof of claim in this case. Nor is he identified as a mortgagee in the mortgage agreement, a payee of the promissory note, or a seller in the sales agreement. Exs. D-1 to D-3.

II.

A.

Section 506(a) of title 11, which provision is germane to all bankruptcy cases, see 11 U.S.C. § 103(a), states:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a).

---

[6]While there are local bankruptcy court rules for this district, there is no rule 9040-1. The exhibit summary also makes reference to "L.F. 9 Rev 05/03." Again, while there are local bankruptcy forms, there is no local form #9 in this district.

In general, secured claims can be bifurcated into allowed secured and unsecured components, with the secured claim limited by the value of the collateral. See, e.g., In re Johns, 37 F.3d 1021, 1023-24 (3d Cir. 1994); In re Hammond, 27 F.3d 52, 55-56 (3d Cir. 1994); Sapos v. Provident Inst. of Sav. in Town of Boston, 967 F.2d 918 (3d Cir. 1992).

A recognized exception to this bifurcation principle is found in section 1322(b)(2) of the Bankruptcy Code.[7] This provision prohibits a chapter 13 debtor from modifying the rights of a secured creditor who holds only a security interest in the debtor's principal residence.[8] Thus, section 506 cannot be used to bifurcate a secured claim protected by the antimodification provisions of 1322(b)(2). See, e.g., Nobelman v. American Savings Bank, 508 U.S. 324 (1993); In re Ferandos, 402 F.3d 147, 151 (3d Cir. 2005).

In In re McDonald, 205 F.3d 606 (3d Cir.), cert. denied sub nom., Master Financial, Inc. v. McDonald, 531 U.S. 822 (2000), the Third Circuit held that Congress did not intend to apply the protection of section 1322(b)(2) to those junior lien claims that

---

[7]Under section 1322(b)(2) a chapter 13 plan may --

> modify the rights of holders of secured claims, other
> than a claim secured only by a security interest in
> real property that is the debtor's principal residence,
> or of holders of unsecured claims, or leave
> unaffected the rights of holders of any class of
> claims.

[8]Conversely, if the scope of the security interest includes more than the debtor's residence (i.e., it includes personalty), bifurcation into allowed secured and unsecured components is permitted in a chapter 13 case. See, e.g., In re Johns, 37 F.3d 1021 (3d Cir. 1994). In this proceeding, the plaintiffs do not assert that defendant JTH holds a secured claim on more than their residence.

6

are "wholly unsecured." Id., 205 F.3d at 614. An asserted secured claim is wholly unsecured when the value of the collateral does not exceed the amount due to lienholders with priority over the challenged lien. Id.; see, e.g., In re Bartee, 212 F.3d 277, 290 5th Cir. 2000).[9]

Thus, the material facts of this adversary proceeding concern the value of the plaintiffs' residence, as well as the amounts of and priority of the various liens asserted against it. Since the mortgage held by JTH created a lien solely upon the debtors' Folcroft residence, in order for this mortgage claim of JTH to be treated as

---

[9]The Third Circuit Court of Appeals offered this explanation:

> Perhaps the clearest explanation of how the [Supreme] Court's discussion [in Nobelman] of the two sections can be reconciled is to point out that while the antimodification clause uses the term "claim" rather than "secured claim" and therefore applies to both the secured and unsecured part of a mortgage, the antimodification clause still states that the claim must be "secured only by a security interest in . . . the debtor's principal residence." 11 U.S.C. § 1322(b)(2) (emphasis added). If a mortgage holder's claim is wholly unsecured, then after the valuation that Justice Thomas said that debtors could seek under § 506(a), the bank is not in any respect a holder of a claim secured by the debtor's residence. The bank simply has an unsecured claim and the antimodification clause does not apply. On the other hand, if any part of the bank's claim is secured, then, under Justice Thomas's interpretation of the term "claim," the entire claim, both secured and unsecured parts, cannot be modified.

In re McDonald, 205 F.3d at 611-12.

7

wholly unsecured, the value of the residence cannot exceed the sum of all liens with priority over JTH's mortgage claim.[10]

B.

In deciding whether the plaintiffs are entitled to the relief they seek—a determination that the defendants hold only an unsecured claim in this chapter 13 case by virtue of section 506(a)—certain evidentiary issues should be considered.

First, I conclude that the plaintiffs have the evidentiary burden of persuasion for relief under section 506(a). In so doing, I recognize that a creditor has the ultimate burden of persuasion when an objection to that creditor's claim has been filed pursuant to 11 U.S.C. § 502(a), with the objector having only an initial burden of production. See, e.g., In re Allegheny International, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992); In re Kincaid, 2008 WL 2278895, at *2 (Bankr. E.D. Pa. 2008). I also appreciate that some courts have compared a party's request for a determination of secured status under section 506(a) to an objection to a proof of claim under section 502. See, e.g., Evabank v. Baxter, 278 B.R. 867, 878 (N.D. Ala. 2002); Matter of Lampert, 61 B.R. 785, 787 (Bankr. W.D. Wis. 1986). I find such a comparison unpersuasive.

---

[10]Although there are decisions that reach a conclusion different from McDonald, Third Circuit precedential decisions are binding upon bankruptcy courts in this circuit. See, e.g., In re Wolf, 2001 WL 34373014, at *1 n.1 (Bankr. M.D. Pa. 2001) (the McDonald decision is binding); see generally Sperrazza v. University of Maryland, 2008 WL 818616, at *5 (E.D. Pa. 2008) ("federal courts of Pennsylvania are bound by the decisions of the United States Court of Appeals for the Third Circuit"); In re William P. Brogna and Co., Inc., 64 B.R. 390, 391 (Bankr. E.D. Pa. 1986).

8

When a party seeks relief under section 506(a), which relief is based, not upon the validity of the secured claim but, upon the value of collateral and the amount owed to lienholders holding greater priority, such relief does not seek to disallow a claim within the meaning of section 502(b). See In re Fareed, 262 B.R. 761, 765-66 (Bankr. N.D. Ill. 2001); see generally In re Cluff, 313 B.R. 323 (Bankr. D. Utah 2004) (provisions of section 502(b) are the exclusive grounds for disallowance of a claim). None of the nine grounds for disallowance found in section 502(b) are applicable in this proceeding. Thus, the evidentiary burdens under section 506(a) are not the same as those applicable to section 502(b).

Moreover, the burden of persuasion has typically been placed upon the party seeking relief under sections 506(b) and 506(c). See Matter of T-H New Orleans Ltd. Partnership,116 F.3d 790, 798 (5th Cir. 1997); In re C.S. Associates, 29 F.3d 903, 906 (3d Cir. 1994). A similar result should apply to section 506(a) relief. Indeed, it is understood that a debtor seeking to avoid a judicial lien under section 522(f)—which, as with section 506(a), involves valuation and possibly priority issues and may result in the judicial lien creditor holding only an allowed unsecured claim—is placed upon the debtor seeking such avoidance. See, e.g., In re Catli, 999 F.2d 1405, 1406 (9th Cir. 1993); In re Soost, 262 B.R. 68, 74 (B.A.P. 8th Cir. 2001).

Accordingly, in this adversary proceeding the plaintiffs bear the evidentiary burden to establish that defendant JTH's lien is wholly unsecured within the meaning of section 506(a). See generally In re Bethoney, 384 B.R. 24, 31 (Bankr. D. Mass. 2008); In re Finnegan, 358 B.R. 644, 650 (Bankr. M.D. Pa. 2006) ("A debtor bears the burden of proof on the issue of valuation under § 506(a)."); In re Webb, 99 B.R. 283, 287 n.5

9

(Bankr. E.D. Pa. 1989); see also In re Young, 390 B.R. 480, 486 (Bankr. D. Me. 2008) (placing burden of persuasion upon a chapter 13 debtor when the result of the section 506 adversary proceeding is to aid in confirmation of a proposed chapter 13 plan.).[11]

C.

The defendants complain at the outset that the plaintiffs have not met their evidentiary burden as to valuation, because no appraisal evidence was offered. Homeowners, however, are competent to offer opinions as to the value to their property. See Advisory Committee Note to Fed. R. Evid. 702 (1972) ("[W]ithin the scope of the rule are not only experts in the strictest sense of the word, . . . but also the large group sometimes called 'skilled' witnesses, such as bankers or landowners testifying to land value."); see, e.g., United States v. 68.94 Acres of Land, 918 F.2d 389, 397 (3d Cir. 1990) ("The Federal Rules of Evidence generally permit landowners to give opinion evidence as to the value of their land due to the special knowledge of property which is presumed to arise out of ownership."); United States v. 7.92 Acres of Land, 769 F.2d 4, 12 (1st Cir. 1985); United States v. 215.7 Acres of Land, 719 F. Supp. 273, 276 (D. Del. 1989).

The Third Circuit Court of Appeals has cautioned that a homeowner would not be qualified to offer an opinion as to value if his testimony were simply a repetition of a valuation opinion stated by an expert who did not testify at trial. See United States v.

---

[11]The debtors here have acknowledged that they cannot confirm their proposed chapter 13 plan unless they prevail in this proceeding.

10

68.94 Acres of Land, 918 F.2d at 398.  In this proceeding, the husband/debtor's testimony is not based on any hearsay expert opinion, and so is not objectionable as such.

Nonetheless, the defendants successfully impeached Mr. Mahmud's testimony that his realty was worth only $112,000 by obtaining his admission that he previously had valued the property in his bankruptcy schedules at $140,000.  To the extent that the husband/debtor's testimony made reference to the current poor state of the current housing market, the more relevant time for valuation purposes, given the debtors' intention to retain the collateral, was the time of their bankruptcy filing.[12]  See, e.g., In re Rodriguez, 375 B.R. 535, 541 n.5 (B.A.P. 9th Cir. 2007); In re Philadelphia Consumer Discount Co., 37 B.R. 946, 950 (E.D. Pa. 1984); In re Solis, 356 B.R. 398 (Bankr. S.D. Tex. 2006); In re Cerminaro, 220 B.R. 518, 524-25 (Bankr. N.D.N.Y. 1998); see also In re Markos Gurnee Partnership, 252 B.R. 712, 717 (Bankr. N.D. Ill. 1997):

> Where the value of the collateral is not sufficient to secure the entire claim of a creditor, then, under § 506(a) of the Code, the creditor has a secured claim, subject to adequate protection, limited to the value of the collateral securing the claim as of the time of the bankruptcy filing.

Thus, any postpetition decrease in value would not be relevant for purposes of section

---

[12]Indeed, as will be mentioned, the plaintiffs contend that the amount of liens against their property should be determined by the proofs of claims filed in this case.  Both Everhome Mortgage and Citizens Bank used Official Bankruptcy Form 10 to file their claims, which form requests that the creditor state the "amount of claim as of date case filed."  Therefore, the claims filed by Everhome Mortgage and Citizens Bank reflect the amounts they alleged as due and owing at the time of the debtors' bankruptcy filing.  See generally In re Lennington, 288 B.R. 802, 803 (Bankr. C.D. Ill. 2003); Local Bankr. R. 3001-1(b)(1) (secured proof of claim in chapter 13 case should include "the balance of principal due on the debt").

Since those proofs of claim reflect amounts due as of the commencement of the case, the plaintiffs' attempted reliance upon the allegations in those proofs of claim appears implicitly to agree that the appropriate time to value their home and thereby determine whether JTH is wholly unsecured is the commencement of their bankruptcy petition.

506(a) relief in this proceeding.

The defendants elected to offer no evidence of value for the Folcroft realty.[13] Given the original purchase price for the realty, as well as the plaintiffs' ability to refinance in 2001 and obtain a second mortgage in 2006, the valuation found in the debtors' bankruptcy schedules is reasonable. Therefore, for purposes of this adversary proceeding, I conclude that the plaintiffs' residence was worth approximately $140,000 on February 4, 2008: the date this chapter 13 case was commenced.

III.

The primary dispute in this proceeding is the remaining evidentiary issue.

Mr. Mahmud offered his own testimony that Everhome Mortgage and Citzens Bank obtained mortgage liens prior to the one obtained in February 2007 by JTH. He also offered testimony as to the original amounts of the Everhome Mortgage lien in 2001 and the Citizens Bank lien in 2006. The only evidence, however, offered as to the amount of these two liens against the debtors' Folcroft realty at the time of their bankruptcy filing in February 2008 is plaintiffs' request that judicial notice under Fed. R. Evid. 201 be taken of the two secured proofs of claim filed in this chapter 13 case by those creditors. Those proofs of claim state the amounts that the secured creditors assert were owed as of February 2008. The defendants contend that "[t]hose proofs of claim have never been considered or litigated and are not binding on Defendants." Defendants'

---

[13] As will be discussed below, the assertion by defendant JTH in its proof of claim that the property was worth $200,000 is inadmissible hearsay. See generally In re Harmony Holdings LLC, 393 B.R. 409, 414 (Bankr. D.S.C. 2008).

12

Posttrial Memorandum, at 3. The issue thus posed by the defendants' objection is whether the plaintiffs can meet their burden of persuasion under section 506(a) primarily through judicial notice of the secured proofs of claims filed by Everhome Mortgage and Citizens Bank.

In general, the factual allegations made in a proof of claim are out-of-court statements under Fed. R. Evid. 801.[14] Thus, unless those allegations are non-hearsay under Rule 801(d) (e.g., an admission by a party-opponent), or some exception to the hearsay rule is applicable, they may be inadmissible. See, e.g., In re Harmony Holdings LLC, 393 B.R. 409, 414 (Bankr. D.S.C. 2008); In re Giquinto, 388 B.R. 152, 168 n. 29 (Bankr. E.D. Pa. 2008); In re Serda, 2008 WL 4671823, at *1 (Bankr. E.D. Cal. 2008) (although the court accepts as credible testimony from the debtor concerning the amount of a secured creditor's prepetition claim, it holds that the proof of claim filed by that creditor "is hearsay as to the actual amount of the senior debt").

Federal Rule of Evidence 201 permits judicial notice of adjudicative facts: those facts "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Certainly, the fact that a document, such as a proof of claim, has been filed with the court falls within the scope of Rule 201(b). As explained by a commentator, however, judicial notice of the existence of a document filed with the court

---

[14]The Federal Rules of Evidence are incorporated into adversary proceedings and contested matters by Fed. R. Bankr. P. 9017.

13

is not the same as judicial notice of the truth of factual assertions contained in that document:

> It is generally accepted that a bankruptcy judge may take judicial notice of the bankruptcy court's records. . . .
>
> What then, is meant by taking judicial notice of a court's own records? There exists a mistaken notion that it means taking judicial notice of the truth of facts asserted in every document in a court file, including pleadings and affidavits. However, a court may not take judicial notice of hearsay allegations as being true merely because they are part of a court record or file. It is difficult to understand why the filing of a document with a court should magically result in the contents of the document attaining a sufficient degree of reliability to overcome evidentiary objections such as hearsay to its admissibility in a trial before a bankruptcy judge.

Russell, Bankruptcy Evidence Manual § 201:5 (2008 ed.) (citation omitted); see, e.g., In re James, 300 B.R. 890, 895 (Bankr. W.D. Tex. 2003) ("This Court is well aware that judicial notice can be taken as to the existence of documents, such as proofs of claim or a debtor's schedules, without inquiring whether the information contained in them is true.").

Clearly, taking judicial notice of a document filed with the court addresses issues of the authenticity of the document for purposes of Fed. R. Evid. 901. The authenticity of a document, however, does not guarantee its admissibility:

> The taking of judicial notice is often merely a way of simplifying the process of authenticating documents which would generally require certification under FRE 901 and 902, and overcoming FRE 1002 best evidence problems (i.e. the concept that because they are in the Court's own files they are accepted as genuine). It is clear however, that authenticating a document does not automatically insure its introduction into evidence in the face of other objections, such as hearsay.

Russell, Bankruptcy Evidence Manual § 201:5 (2008 ed.).

14

The Third Circuit Court of Appeals has recognized this limitation upon judicial notice:

> We hasten to add that the fact that a document is included in the relevant record does not mean that the bankruptcy judge, or the reviewing district court judge, is entitled to use it for any purpose. Just as with documents in the record of a civil action filed in a district court, there are principles that limit its use.
>
> ***
>
> Another limitation is the rule requiring evidentiary competence. Under this rule, a document cannot be put to a hearsay use for most purposes, and for this reason, a previously filed court document will generally not be competent evidence of the truth of the matters asserted therein.

In re Indian Palms Associates, Ltd., 61 F.3d 197, 205 (3d Cir. 1995); see In re Goetz, 120 F.3d 268 (Table), 1997 WL 415340, at *1-*2 (9th Cir. 1997) (bankruptcy court properly refused to take judicial notice of "schedules, proofs of claim and various documents filed in each underlying bankruptcy case as proof of the amount the debtors owed to unsecured creditors").

There may be circumstances in which the existence of documents in the court's records is germane, without consideration of the truth of the factual allegations, if any, in those documents. See, e.g., In re Harmony Holdings, LLC, 393 B.R. at 413-14; In re H.E. Graf, Inc., 125 B.R. 604, 606 (Bankr. E.D. Cal. 1991); In re American Solar King Corp., 90 B.R. 808, 829 n.41 (Bankr. W.D. Tex. 1988). As generally observed by the Court of Appeals:

> Documents in the case record will be relevant to many issues, including waiver, estoppel, preservation of an issue for appeal, the fact and length of litigation delay, limitations issues, prejudice to an opposing party, and the like. The use of documents in the case record for such purposes does not offend the limitations discussed above because the documents

15

>   are not being used to determine disputed facts relating to the
>   merits of the case and their use thus does not impose on a
>   party's ability to meet the evidence against it. Similarly, it is
>   not seriously questioned that the filing of documents in the
>   case record provides competent evidence of certain facts-that
>   a specific document was filed, that a party took a certain
>   position, that certain judicial findings, allegations, or
>   admissions were made.

In re Indian Palms Associates, Ltd., 61 F.3d at 205.

To the extent that a party requests a court to take judicial notice of documents filed with the court for purposes beyond authentication,

>   [u]nless they relate to a preliminary question of admissibility
>   as to which the rules of evidence (other than privilege) do not
>   ordinarily apply, or are not adjudicative facts, statements
>   therein must be admissible under the Federal Rules of
>   Evidence.

In re Bestway Products, Inc., 151 B.R. 530, 541 (Bankr. E.D. Cal. 1993), aff'd, 165 B.R. 339 (B.A.P. 9th Cir. 1994), and aff'd. sub nom. In re Wetherbee, 165 B.R. 339 (B.A.P. 9th Cir. 1994).

Here, the plaintiffs rely upon Fed. R. Bankr. P. 3001(f) for the admissibility of the proofs of claim filed by Everhome Mortgage and Citizens Bank. See Plaintiffs' Posttrial Memorandum, at 11. This rule provides: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

The Advisory Committee Note (1983) to Bankruptcy Rule 3001 states: "Subdivision (f) of this rule supplements the Federal Rules of Evidence as they apply to cases under the Code." Similarly, the Advisory Committee Note (1983) to Bankruptcy Rule 9017 lists Rule 3001(f) as an example of a "bankruptcy rule[] containing matters of an evidentiary nature[.]" Thus, I agree with the plaintiffs' premise that judicial notice of

16

a proof of claim that has prima facie validity under Rule 3001(f) overcomes the hearsay objection to those factual averments underlying its claim, such as the amount owed to that creditor as of the date of the bankruptcy filing. See In re Millspaugh, 302 B.R. 90, 96 n.9 (Bankr. D. Idaho 2003) (for purposes of determining that a claim is wholly unsecured under section 506(a), court accepts as true the averments of a secured proof of claim that was prima facie valid under Rule 3001(f)); see also In re Carlisle, 312 B.R. 555, 558-59 (Bankr. M.D. Pa.) (Rule 3001(f) makes authentication under Fed. R. Evid. 901 unnecessary), aff'd, 320 B.R. 796 (M.D. Pa. 2004); 20 Proof of Facts 3d, 521 § 7 (Am. Jur. 2008) (to establish a lack of equity under section 362(d)(2), a creditor may rely upon secured proofs of claim that are prima facie valid under Rule 3001(f)).[15]

To achieve such prima facie status, however, Rule 3001 contains certain conditions:

> (c) Claim based on a writing
>
> When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.
>
> (d) Evidence of perfection of security interest
>
> If a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected.

---

[15] Averments in the proof of claim as to the value of the collateral, however, remain inadmissible hearsay as not addressed by Rule 3001(f).

17

To meet the requirements of Rule 3001(c), the mortgagee should attach at least a copy of the underlying promissory note and mortgage.  See In re Sako, 394 B.R. 90, 100 (Bankr. E.D. Pa. 2008); see generally In re Taylor, 363 B.R. 303, 308 (Bankr. M.D. Fla. 2007).[16]

I recognize that the failure of a creditor to file a proof of claim that fails to meet the requirements of Rule 3001, and thus is not prima facie valid, does not mean that the claim is disallowed for purposes of section 502(b).  See In re Kirkland 379 B.R. 341 (B.A.P. 10th Cir. 2007); In re Heath, 331 B.R. 424, 435 (B.A.P. 9th Cir. 2005) ("Noncompliance with Rule 3001(c) is not one of the statutory grounds for disallowance."); In re Dove-Nation, 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004); In re Cluff, 313 B.R. 323, 332 (Bankr. D. Utah 2004).  As noted above, however, the issue posed in this adversary proceeding is not disallowance of a claim under section 502(b) but determination of secured status under section 506(a).

In this proceeding, the Everhome Mortgage proof of claim clearly does not meet the requirements of Fed. R. Bankr. P. 3001(c).[17]  Thus, it cannot be accorded prima facie status under Rule 3001(f).  Its averment as to the loan amount due that creditor at

---

[16]Official Bankruptcy Form #10 instructs that copies of supporting documents such as promissory notes and mortgages should be attached to the proof of claim.  Moreover, if the supporting documents are not available, Form #10 states that the creditor should provide an explanation for such unavailability.

[17]Arguably, the proof of claim filed by Citizens Bank may also not comply with the documentation requirements of Rule 3001.
I also note that if one were to add the amounts averred as owing by Citizens Bank and Everhome Mortgage, the total exceeds the value of the collateral by less than $9,000.  Compliance with Rule 3001 may have permitted JTH to demonstrate that the claims asserted by the two other secured creditors were overstated (e.g., the claim includes charges and fees not permitted under Pennsylvania law, or not permitted by the creditor's note or mortgage agreement).

18

the time of the plaintiffs' bankruptcy filing in February 2008 constitutes hearsay, the admission of which was properly objected to by the defendants.[18]  Furthermore, as the plaintiffs offered no other evidence regarding the amount due this creditor, they have not met their burden of persuasion to establish that the mortgage lien held by JTH Investment Group, LLC is wholly unsecured under section 506(a), as required by In re McDonald. (And, as mentioned earlier, they did not demonstrate that defendant David Hang is asserting any secured claim in this bankruptcy case.)

   Therefore, an appropriate order in favor of defendants shall be entered.

*[signature: Bruce Fox]*

_____
BRUCE FOX
United States Bankruptcy Judge

Dated: December 4, 2008

---

[18]While a party can waive an evidentiary objection such as hearsay, see, e.g., In re Litwok, 4 Fed. Appx. 43, 44 (2d Cir. 2001); In re Stewart, 2008 WL 4526130, at *15 (Bankr. E.D. Va. 2008), and in that circumstance judicial notice of a non-prima facie proof of claim may be taken for the truth of its assertions, there was no such waiver in this instance.